**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LUIS HERACLIO GARCIA SANCHEZ,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO.  26-2676** |
| **J.L. JAMISON,** *et al.,* | |
| **Respondents.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                          **April 24, 2026**

On April 22, 2026, Petitioner Luis Heraclio Garcia Sanchez was detained by the

Department of Homeland Security ("DHS") pursuant to the government's new interpretation of

Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225.

Following his detention, Garcia Sanchez filed a petition for a writ of habeas corpus under 28

U.S.C. § 2241, arguing that his prolonged detention without a bond hearing rests upon an

unlawful interpretation of 8 U.S.C. § 1225(b)(2), violates the Administrative Procedures Act

("APA"), and denies him due process.[1] The Court agrees that Garcia Sanchez cannot be subject

to mandatory detention under § 1225(b)(2) because of his long-established residence in the

United States. Consistent with the reasoning of hundreds of prior rulings in this District,[2] this

Court will grant Garcia Sanchez's petition.

---

[1] Pet. [Doc. No. 1].

[2] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9,

I.    **BACKGROUND**

Garcia Sanchez is a thirty-year-old native of Mexico.[3] He entered the United States through the Southern Border on or about December 7, 2023.[4] Shortly after entering the country, Garcia Sanchez was briefly detained and processed by DHS officers, who initiated removal proceedings against him and then released him on his own recognizance.[5] Garcia Sanchez eventually settled in Norristown, Pennsylvania.[6] Until his more recent detention, he lived with his cousin and was employed at a restaurant.[7] He has submitted an asylum application.[8] Concerning the parallel proceedings in immigration court, Garcia Sanchez has a hearing scheduled on May 26, 2026, at 8:30 a.m.[9]

On April 22, 2026, DHS officers arrested Garcia Sanchez in Schwenksville, Pennsylvania.[10] As alleged in the petition, the officers "took Mr. Garcia Sanchez into custody with no prior notice or opportunity to contest his detention."[11] He is being held at the

---

2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Abubacar Toure v. Jamison*, No. 26-2623, 2026 WL 1103022 (E.D. Pa. Apr. 23, 2026); *Matias Sanchez v. McShane*, No. 26-2499, 2026 WL 1082237 (E.D. Pa. Apr. 21, 2026); and *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057 (E.D. Pa. Apr. 17, 2026).

[3] Pet. ¶¶ 1, 17 [Doc. No. 1].

[4] *Id.*

[5] *Id.* ¶ 18; *see* Opp'n at 3 [Doc. No. 4].

[6] Pet. ¶¶ 1, 19 [Doc. No. 1].

[7] *Id.* ¶ 19.

[8] *Id.*

[9] *Id.*; Pet., Ex. 2 [Doc. No. 1-4].

[10] Pet. ¶¶ 2, 20 [Doc. No. 1].

[11] *Id.* ¶ 20.

Philadelphia Federal Detention Center ("FDC") and has not been provided a bond hearing.[12] Garcia Sanchez's detention results from Respondents' new interpretation of 8 U.S.C. § 1225(b)(2)(A), whereby they suggest that individuals who have been long-present in the United States without lawful status are "applicant[s] for admission" and thus subject to detention without a bond hearing.[13]

On April 23, 2026, Garcia Sanchez petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[14] Consistent with its established practice for recent cases involving individuals detained by the DHS under 8 U.S.C. § 1225(b)(2), this Court ordered Respondents to show cause why Garcia Sanchez's petition should not be granted.[15] It also scheduled a show cause hearing.[16] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[17]

## II.   LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[18] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[19]

---

[12] *Id.* ¶¶ 2, 21; Pet., Ex. 1 [Doc. No. 1-3].

[13] *See* Pet. ¶ 22 [Doc. No. 1]; Opp'n at 3 [Doc. No. 4]; 8 U.S.C. § 1225(b)(2)(A).

[14] Pet. [Doc. No. 1].

[15] 4/23/26 Order [Doc. No. 3].

[16] *Id.*

[17] 4/24/26 Stipulation and Order [Doc. No. 6].

[18] 28 U.S.C. § 2241(c)(3); *see Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993) (internal quotation marks omitted)).

[19] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

### III.    DISCUSSION

The decisive issue is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2) extends to noncitizens who, despite not being admitted or paroled, have an established presence in the United States.[20] As the parties acknowledge, courts in this District have confronted this question repeatedly and exhaustively.[21] On all occasions, the decisions rendered in this District have rejected Respondents' position and found that 8 U.S.C. § 1225(b)(2) does not cover noncitizens who, though subject to removal proceedings, are firmly established in the country.[22] Even so, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[23]

8 U.S.C. § 1225(b)(2)(A) provides as follows:

**(2)    Inspection of other aliens**

**(A)    In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

In urging this Court to diverge from its interpretation of § 1225(b)(2)(A) in prior decisions, Respondents cite the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[24] and the

---

[20] The government does not contest whether this Court has jurisdiction to review Garcia Sanchez's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

[21] *See* Pet. ¶ 24 [Doc. No. 1]; Opp'n at 2 [Doc. No. 4].

[22] *See supra* n.1.

[23] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[24] 166 F.4th 494 (5th Cir. 2026).

Eighth Circuit's decision in *Avila v. Bondi*.[25] Respondents stress that, in those cases, the courts held that "seeking admission" was not a separate requirement from the condition that the individual be an "applicant for admission."[26]

However, the Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez* and *Avila*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[27] "Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[28] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[29] Respondents' reading would render the term "seeking admission" entirely superfluous.[30] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[31] As a result, the detention of noncitizens like Garcia Sanchez is governed not by § 1225 but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing before continued detention is permitted.[32]

---

[25] 170 F.4th 1128 (8th Cir. 2026).

[26] Opp'n at 3, 5 [Doc. No. 4].

[27] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct— physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

[28] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[29] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[30] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[31] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[32] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta*, 2026 WL 1047057, at *4 ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).

Congress's amendment of § 1226 through the Laken Riley Act underscores this point. There, Congress adopted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with certain kinds of crimes.[33] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detention without a bond hearing irrespective of such criminal matters. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen engages in criminal activity would likewise be superfluous on Respondents' reading.[34]

In summary, Garcia Sanchez may be detained under the INA only if, pursuant to § 1226(a) and applicable regulations, he receives a bond hearing and the facts demonstrate that he poses a flight risk or threatens to endanger his community.[35] Respondents do not claim that Garcia Sanchez is likely to flee or that he is dangerous. Nor does the record illustrate such concerns. Garcia Sanchez has been in the United States since 2023 and has been employed without incident.[36] Further, there is nothing to suggest that he has failed to comply with the conditions of his removal proceedings. Accordingly, a bond hearing is unnecessary, and the Court will order Garcia Sanchez's immediate release.[37]

Because Garcia Sanchez's detention without a bond hearing violates the INA, the Court need not reach his APA and due process arguments.

---

[33] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

[34] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

[35] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[36] Pet. ¶ 19 [Doc. No. 1].

[37] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).

**IV.    CONCLUSION**

For the foregoing reasons, the DHS lacked authority to mandatorily detain Garcia Sanchez without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The Court will grant his petition and issue a writ of habeas corpus. An appropriate order will follow.